IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JONATHON MARTIN SEGURA,**

    **Plaintiff,**

v.                                                     **Case No. 1:10-cv-1006 WDS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's *Motion to Reverse and Remand for a Rehearing*. [Doc. 20.] Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security who determined that Plaintiff is not eligible for benefits. Having considered Plaintiff's motion and memorandum [Doc. 20], Defendant's response [Doc. 21], the administrative record and applicable law, the Court concludes that Plaintiff's motion should be DENIED.

### **I. Background**

Plaintiff was born October 15, 1985. Tr. 129. He did not complete high school, and has past work experience as a busser, construction worker, and jewelry maker. Tr. 68, 171, 174. He has not worked since 2007. Tr. 170.

Plaintiff applied for benefits in June 2008. Tr. 129–40. He alleged arthritis in the back and chronic back pain with an onset date of January 1, 2007, and depression and anxiety with an onset date of June 20, 2008. Tr. 170, 200. Plaintiff's applications were denied initially, Tr. 84–87, and on reconsideration, Tr. 88–93.

Plaintiff requested a hearing before an administrative law judge (ALJ). Tr. 98–99. The hearing was held December 17, 2009. Tr. 24. Plaintiff was represented by counsel and testified at

the hearing. Tr. 28–65, 68. A vocational expert also testified. Tr. 67–76. On May 27, 2010, the ALJ issued a decision finding Plaintiff not disabled. Tr. 10–19. Plaintiff then filed a request for review with the Appeals Council. Tr. 6. The Appeals Council denied the request for review, Tr. 1–4, thus rendering the ALJ's decision the final decision of the Commissioner from which Plaintiff now appeals pursuant to 42 U.S.C. § 405(g).

## II.  Legal Standards

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence nor should it substitute its judgment for that of the Commissioner. *Id.* Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988) (quotation marks and citation omitted).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750–52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* at 750–51. If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 751. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part

404 ("Listings" or "Listed Impairment"). *Id.* If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.*

The claimant is not disabled if he or she can perform past work. *Williams*, 844 F.2d at 751. If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision and Plaintiff's allegations of error

At step one, the ALJ found Plaintiff was not engaging in substantial gainful activity. Tr. 12. At step 2, the ALJ found that Plaintiff had severe impairments consisting of mild lumbar degenerative changes with a disc bulge at L5-S1, and depressive and post-traumatic stress disorders. Tr. 12.  At step three, he found Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of a listed impairment. Tr. 12–13.

At step four, the ALJ found that Plaintiff

> ...has the residual functional capacity to perform a limited range of "light" or alternatively "sedentary" work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is restricted to occupations which deal with things rather than people; involve only simple, routine, and repetitive tasks; and involve only simple work related decisions in an environment that is not fast paced in nature.

Tr. 13. He also found the following additional limitations: "[H]e can occasionally climb ramps and stairs; he cannot climb ladders, ropes or scaffolds; he can occasionally engage in activities involving

balancing, stooping, kneeling, crouching and crawling." Tr. 16.

Plaintiff has no documented vocationally relevant past work.  Tr. 17.  The ALJ thus proceeded to step five where he found that Plaintiff is able to perform work that exists in significant numbers in the national economy, and is therefore not disabled.  Tr. 18.

Plaintiff argues the RFC is not supported by substantial evidence for the following reasons: (1) the ALJ failed to adequately address how a limitation in the area of concentration, persistence, or pace affects the occupational base; (2) the ALJ failed to discuss Plaintiff's Global Assessment Functioning (GAF) scores; (3) the ALJ improperly relied on the opinion of consulting examiner Dr. Amissah; and (4) the ALJ erroneously assessed Plaintiff's credibility.

## IV.  Discussion

### A. Whether the ALJ adequately addressed how Plaintiff's limitation in the area of concentration, persistence, or pace affects the occupational base

Plaintiff alleges that the ALJ identified two moderate mental impairments—(1) social functioning and (2) concentration, persistence, and pace—but erred in not including the second impairment when he translated Plaintiff's impairments into vocational limitations.  Plaintiff argues the ALJ did not adequately address how the second limitation affects the occupational base.  The Court does not agree.

Contrary to Plaintiff's claim, the ALJ stated that Plaintiff's "ability to perform all or substantially all of the requirements of the [light] level of work has been impeded by additional [mental] limitations" and that because of this impairment, Plaintiff is limited to work that "was not performed in a fast paced production environment" and that he "can attend and concentrate for two hours, then needs to take a break, can attend and concentrate for two more hours, and then needs to take a break, so on and so forth, until he completes an eight hour day."  Tr. 16, 18.  These limitations

specifically address the impairment that Plaintiff alleges was omitted by the ALJ.

To determine the extent to which these limitations erode the unskilled occupational bases for both light and sedentary work, the ALJ posed a detailed hypothetical to the vocational expert:

> The individual, the hypothetical individual in question is limited to simple, routing [sic], repetitive tasks that are not performed in a fast paced production environment and involve only simple work related decisions.  By a fast paced production environment I'm thinking of something like a McDonald[']s restaurant at noon or the famous I Love Lucy episode with the conveyor belt going by the, the workers.  A conveyor belt full of chocolate's [sic] going by the worker.  That's what I'm thinking of when I say fast paced production environment.  The individual in question can attend and concentrate for two hours at a time then needs to take a break, can attend and concentrate for two more hours at a time, then needs to take a break.  So on and so forth until the individual completes an eight-hour day.  The individual in question would deal primarily with things and not with people.

Tr. 67–68, 70.  Therefore, not only did the ALJ include *both* moderate mental impairments in the RFC, his hypothetical to the VE described the intended extent of the limitations in detailed, concrete terms.  In response to the hypothetical, the vocational expert identified several occupations Plaintiff could perform considering all of his limitations, including his limitation in concentration, persistence or pace.  Tr. 69–73.

This case is distinguishable from *Wiederholt v. Barnhart*.  In *Wiederholt*, the ALJ found that the plaintiff was limited to simple, unskilled job tasks and had moderate difficulties in maintaining concentration, persistence, and pace. The ALJ's hypothetical to the VE, however, only included the limitation to simple, unskilled work. The hypothetical did not mention the plaintiff's difficulty with maintaining concentration, persistence, and pace. *Wiederholt v. Barnhart*, 121 F.App'x 833, 839 (10th Cir. 2005) (unpublished).  Here, in contrast, not only did the ALJ include both moderate mental impairments in the RFC, his hypothetical to the vocational expert described the intended extent of the limitations in detailed, concrete terms.  The other cases Plaintiff relies on are similarly distinguishable.  *See Smith v. Barnhart*, 172 F.App'x 795, 800 (10th Cir. 2006) (unpublished)

(hypothetical that did not incorporate findings concerning concentration, persistence, or pace was flawed); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (same).

Plaintiff has not identified any manner in which the hypothetical the ALJ posed was deficient. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (hypotheticals must be carefully crafted to reflect a claimant's RFC). The Court therefore concludes there is no merit to Plaintiff's argument that the ALJ failed to adequately address his limitations in concentration, persistence, or pace.

**B.    Whether the ALJ committed legal error by failing to discuss Plaintiff's GAF scores**

Plaintiff argues the ALJ committed legal error by failing to discuss Plaintiff's GAF scores. The Court rejects this argument.

The record indicates that Robert Becher, a licensed counselor, saw Plaintiff on four occasions. At the initial visit on January 13, 2009, Mr. Becher assigned Plaintiff a GAF score of 45 to 50, with 55 the highest in the past year. Tr. 364. At the three subsequent visits, all in February 2009, Mr. Becher reported a GAF score of 50. Tr. 359 (Feb. 2, 2009); Tr. 357 (Feb. 10, 2009); Tr. 355 (Feb. 27, 2009).

The Court rejects Plaintiff's contention that the case must be remanded because the ALJ failed to mention the GAF scores in his written decision. The ALJ is not required to discuss every piece of evidence as long as the record demonstrates that he considered all the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir.1996). The GAF represents a person's "overall level of functioning." *Grede v. Astrue*, 443 F.App'x 323, 326 n.2 (10th Cir. 2011) (unpublished) (citing American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000)). A GAF score of 41 to 50 indicates "[s]erious symptoms... [or] serious

impairment in social, occupational, or school functioning," such as inability to keep a job." *Id.* (alterations and quotation marks in original). It seems clear the ALJ considered the GAF scores because he found Plaintiff has mild restrictions in the activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. Tr. 13.

Plaintiff argues the ALJ's failure to discuss his GAF scores is "egregious" because he has reported many symptoms consistent with a GAF score below 50, for example lack of motivation to get out of bed, no friends, becomes easily side-tracked, experiences racing thoughts, insomnia, feelings of anxiety, worthlessness, and guilt, and he cannot stop thinking about the past. [Doc. 20 at 6.] Even if these symptoms are consistent with a GAF score below 50, as Plaintiff contends, no error was committed because a GAF score alone does not determine disability; "rather it is a piece of evidence to be considered with the rest of the record." *Butler v. Astrue*, 412 F.App'x 144, 147 (10th Cir. 2011) (citation omitted) (GAF scores may be helpful at arriving at an RFC but are "not essential to an RFC's accuracy").

Furthermore, in this case, Plaintiff's GAF scores were not particularly helpful. First, Mr. Becher is not an "acceptable medical source" and his opinion therefore cannot establish the existence of a medically determinable impairment. SSR 06-03p, 2006 WL 2329939, *2 (Aug. 6, 2006). Second, despite noting the symptoms Plaintiff reported, Mr. Becker did not link the GAF scores to any work-related limitations. Tr. 355, 357, 359, 361–64. Standing alone, a low GAF score without further explanation does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. *Eden v. Barnhart*, 109 F. App'x 311, 314 (10th Cir. 2004) (unpublished). The Court finds that there was substantial evidence to support the mental component of the ALJ's RFC, and that the ALJ's failure to specifically discuss Mr. Becher's GAF scores was not reversible error.

### C.     Whether the ALJ properly discussed Dr. Amissah's opinion

Plaintiff argues the ALJ erroneously based the physical portion of the RFC on an evaluation performed by I. Amissah, M.D., a consulting examiner who found that Plaintiff had no functional limitations.  Plaintiff appears to be arguing that Dr. Amissah's opinion was not supported by substantial evidence.  The Court rejects this argument because the ALJ did not adopt Dr. Amissah's finding of no functional limitation, and there is substantial evidence to support the actual RFC.

Dr. Amissah examined Plaintiff on July 28, 2008.  He reported that Plaintiff had spine tenderness at the L4-5 level, but no paraspinal tenderness. Tr. 265.  Plaintiff's gait and lumbar range of motion were normal, he was able to walk on heels and toes, and able to squat 100% of the time without difficulty.  Tr. 265.  Dr. Amissah's impression was "[m]echanical low back with no radiculopathy" and depression.  Tr. 265.  He assessed Plaintiff as having no functional limitations. Tr. 265.

Plaintiff apparently does not agree with Dr. Amissah's assessment, but his specific challenge to the ALJ's decision is unclear.  Dr. Amissah's evaluation was only one piece of evidence among many the ALJ discussed, and he did not give it controlling weight.  Despite Dr. Amissah's "no functional limitation" conclusion, the ALJ assessed Plaintiff with an RFC of only light or sedentary work.

Plaintiff points to an MRI performed in August 2008 which showed a central disc protrusion at L5-S1 with an annular tear, Tr. 275, and notes of a physical therapy session in July 2008 when he was found to have muscular tightness of the thoracic spine and lumbar spine and a mild left lumbar curvature.  Tr. 277.  Given the RFC for light or sedentary work, it is clear to the Court that the ALJ did consider and give weight to this medical evidence.  Plaintiff fails to explain how this other evidence is inconsistent with a light or sedentary RFC.  *See Frey v. Bowen,* 816 F.2d 508, 512

(10th Cir. 1987) (evidence is not substantial if it is overwhelmed by other evidence). Plaintiff's argument in this regard is not well taken.

### D.  Whether the ALJ's credibility determination is supported by substantial evidence

Plaintiff challenges the ALJ's credibility findings regarding Plaintiff's reports of (1) panic attacks and (2) disabling back pain. The Court rejects both arguments because the ALJ adequately set forth the specific evidence he relied on to assess Plaintiff's credibility. *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (deferring to ALJ's credibility assessment where ALJ properly considered claimant's testimony in light of record evidence).

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation and quotation marks omitted). Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted). The process "does not require a formalistic factor-by-factor recitation of the evidence" but is satisfied if "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff claims he suffers from panic attacks that occur four or five times a week and last up to two hours. Tr. 60–63. His complaints about panic attacks surfaced for the first time at the hearing and the ALJ did not find the testimony credible. Tr. 16. Plaintiff argues the ALJ improperly and incorrectly expressed the medical opinion that "[o]rdinarily panic attacks do not last two hours." Tr. 16.

While it is true that an ALJ may not substitute his own medical opinion for that of a

9

claimant's treating physicians, *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004), that is not what occurred here. Rather, the ALJ properly noted that the complete absence of medical evidence supporting Plaintiff's claims of disabling panic attacks undermined his credibility. He noted that prior to the hearing Plaintiff had never listed panic attacks as an impairment, never mentioned panic attacks to his psychiatric providers, though he mentioned other mental disorders, testified he believed the panic attacks were normal, and never sought treatment at an emergency room. Tr. 16. Given the substantial evidence supporting the ALJ's credibility determination, the Court need not consider whether the ALJ improperly opined that panic attacks ordinarily do not last two hours.

The ALJ also found "implausible" Plaintiff's description of the severity of his back pain. Tr. 15. After examining the record as a whole, the Court concludes this credibility finding also is closely and affirmatively linked to substantial evidence. The ALJ cited medical evidence indicating that Plaintiff had a normal gait, normal posture, no evidence of atrophy in the lower extremities, and intact muscle strength and reflexes. Tr. 15. The ALJ further noted that Plaintiff has not received the type of medical treatment one would expect of someone who, as Plaintiff claims, four or five times a week experiences pain as high as ten on a ten-point scale. Tr. 15. Although Plaintiff told his doctors that lifting his children exacerbates his back pain, that he needs to take breaks if he stands too long, and that he is unable to sit the whole time while watching television, he also stated his daily activities include caring for his three young children, doing light housework, driving, and shopping. Tr. 208–12.

There is no merit to Plaintiff's argument that remand is required merely because Plaintiff testified he does not like doctors, or going to the hospital, or that he cannot sit very long while watching television. In evaluating Plaintiff's pain testimony, the ALJ properly considered Plaintiff's

failure to seek medical attention, failure to take pain medication, and the nature of his daily activities.  *See Hargis*, 945 F.2d at 1989.

Despite finding Plaintiff's claims implausible, the ALJ gave him the benefit of the doubt in evaluating the evidence and found him capable of only light or sedentary work.  Tr. 16.  Plaintiff argues in conclusory fashion that the ALJ substituted his lay opinion for a medical opinion, but he has does not identified any medical opinion in the record that is inconsistent with the RFC the ALJ assigned.

IT IS THEREFORE ORDERED that Plaintiff's *Motion to Reverse and Remand for a Rehearing* [Doc. 20] is **DENIED.**

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**